THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ALAN DAVIS, Appellant. [815 NYS2d 659]—

Appeal by the defendant from a judgment of the Supreme Court, Kings County (Kreindler, J.), rendered May 9, 2003, convicting him of criminal sale of a controlled substance in the fourth degree, upon his plea of guilty, and imposing sentence.

Ordered that the judgment is reversed, on the law, the motion pursuant to CPL 380.30 is granted, the indictment is dismissed, the order of the Supreme Court, Kings County, entered September 29, 2003, is modified accordingly, and the matter is remitted to the Supreme Court, Kings County, for the purpose of entering an order in its discretion pursuant to CPL 160.50.

On February 13, 1986 the defendant was convicted of criminal sale of a controlled substance in the fourth degree, upon a plea of guilty. He was released on his own recognizance and directed to participate in a program called the court employment project (hereinafter the CEP). The court adjourned the matter until March 19, 1986 for sentencing. In the interim, on February 20, 1986, the defendant was arrested by the New York

City Police Department (hereinafter the NYPD) on a fugitive warrant from Connecticut. He was arraigned the following day under the alias Albert Ashford, using the same New York State identification number used in the instant arrest. On February 25, 1986 the defendant was extradited to Connecticut.

On March 5, 1986 the Supreme Court, Kings County, advanced the instant case on the defendant's failure to attend the CEP. On March 7, 1986 the Supreme Court issued a bench warrant for the defendant's arrest. On April 4, 1986 the NYPD's warrant division learned that the defendant was incarcerated at Somers Correctional Facility in Connecticut under the name Albert Ashford, and that his earliest possible release date was May 25, 1988. On or about April 9, 1986 the NYPD notified the Kings County District Attorney's Office (hereinafter the D.A.'s Office) of the defendant's Connecticut incarceration.

The People claim that on May 15, 1986 a detainer warrant against the defendant was lodged. However, this claim is substantiated only by a handwritten notation in a NYPD warrant officer's report indicating that a telephone call from someone in the central warrant unit advised the officer of that fact. The defendant was released sometime in the spring of 1988. It is undisputed that the People made no attempt after May 15, 1986, and before the defendant's release in the spring of 1988, to formally extradite the defendant or otherwise secure his presence in New York for sentencing. During the ensuing 15 years, the defendant was incarcerated for numerous periods of time in Connecticut under the same alias used at the time of his extradition to Connecticut.

On October 8, 2002 the Connecticut authorities notified the D.A.'s Office that the defendant was going to be released from prison on January 3, 2003. The record does not indicate what triggered this sudden communication to the People in 2002 regarding the defendant's Connecticut incarceration. However, between October 9, 2002 and January 3, 2003, the D.A.'s Office, the Department of Corrections in Connecticut (hereinafter DOCC), and the Connecticut State Police exchanged various correspondence pursuant to which the D.A.'s Office advised DOCC that it was going to extradite the defendant, and the Connecticut authorities advised the D.A.'s Office that the defendant had waived extradition. On January 10, 2003 the defendant was released by the Connecticut authorities into the custody of the NYPD and he was placed under arrest.

By notice of motion dated March 25, 2003, the defendant moved pursuant to CPL 380.30 to dismiss the indictment on the ground that the delay in his sentencing was unreasonable. In an

order entered September 27, 2003 the Supreme Court denied the motion.

CPL 380.30 (1) provides that a "[s]entence must be pronounced without unreasonable delay." "If the delay is caused by legal proceedings or other conduct of the defendant which frustrates the entry of judgment, it is excusable" (*People v Drake,* 61 NY2d 359, 366 [1984]), even where the delay is lengthy (*see People v Headley,* 134 AD2d 519, 520 [1987]). However, the People do not have a duty to make efforts to apprehend an absconding defendant (*see People v Borgwin,* 23 AD3d 491 [2005]; *People v Headley, supra*).

Here, the defendant did not abscond in 1986. Rather, he was extradited to Connecticut. Given that the People were aware of the defendant's whereabouts as early as April 1986, their failure to attempt to extradite him upon his initial release from a Connecticut correctional facility in 1988 was unreasonable (*see People v Monaghan,* 34 AD2d 815, 817 [1970]; *cf. People v Headley, supra*). In addition, the 15-year delay that followed that initial release would in all likelihood have been avoided had the People made a formal request to extradite him then, just as they did in 2002 (*see People v Reyes,* 15 AD3d 868, 869 [2005]; *People v Monaghan, supra*). Contrary to the People's contention, the defendant's use of an alias during that time could not have "undoubtedly frustrated any opportunity the People may have had to learn that he was in custody in Connecticut," as the record reveals that they knew in 1986 that the defendant had been extradited to Connecticut and incarcerated under that alias. Nor did the People proffer any evidence demonstrating that any efforts to locate the defendant were made and thwarted because they had the wrong name. Moreover, the defendant had "no duty to demand sentence and the question of loss or retention of jurisdiction should not depend on activity or nonactivity of the defendant" (*People ex rel. Harty v Fay,* 10 NY2d 374, 377 [1961]; *People v Reyes, supra*). Thus, the extremely long delay of 17 years operated to divest the court of jurisdiction to sentence the defendant (*see People v Drake, supra* at 366-367; *People ex rel. Harty v Fay, supra* at 379; *People v Monaghan, supra; see also People v Williams,* 28 AD3d 500 [2006]). Accordingly, the defendant's motion pursuant to CPL 380.30 should have been granted and the indictment dismissed.

The People's remaining contentions are without merit. Miller, J.P., Ritter, Skelos and Lifson, JJ., concur.